Case number 24-1071, et al. Grand River Dam Authority Petitioner v. Federal Energy Regulatory Commission. Mr. Zetlin for the petitioner, Mr. Perkins for the respondent, Mr. Cassette for the intervener. Good morning. Good morning, Your Honor. Misha Zetlin for GRDA. The Pensacola Dam has two functions as relevant here. One, we use the dam for power generation to service our larger rural customers in Oklahoma under the supervision of FERC. Two, the U.S. Army Corps of Engineers uses the dam for flood control operations for the benefit of the entire Arkansas River system by telling us to open and close the gates in the Corps' discretion. All of the disputed flooding here, to the extent it's not just caused by natural causes, is caused entirely by the Corps' flood control operations, not by our power generation operations. Counselor? Yes, Your Honor. Before we get into the facts of this, I'd like to talk about standing for the authority. So here, the brief doesn't say very much about this other than that the authority is the object of FERC's action. Yes, Your Honor. But in our decision from a few years ago, remanding this to FERC, we asked FERC to do a variety of different kinds of legal analysis about the statutes and the underlying license, which they did. So what is the direct injury, the concrete and imminent injury that the authority faces at this point from FERC's current decision? I mean, we have to conduct various studies, which are going to cost dollars and cents. Didn't the authority already conduct the study and submit a report to FERC? There are additional studies being required. Just during the pendency of these proceedings, they required more from us under the, you know, submit more data, more stuff under the orders on review. Have those reports been submitted as well? We updated them with additional data just a couple of months ago, and we responded to them and said, hey, why are you asking us for this data? We're on appeal before the D.C. Circuit, and they basically sent a letter saying, no, give it to us. We wouldn't have had to do that work. Did you seek to stay those requirements while this appeal was pending before FERC? I don't know if that's a mechanism that was available. We asked, we claimed that because we were before this court, they didn't have the authority. Then we asked them in that letter, use your discretion to stay this. They sent us back a pretty nasty letter saying, no, give it to us now. And then we went ahead and gave them the additional data that they want. But the authority hasn't been required to purchase any land for flood control. I mean, they haven't been asked to acquire land or to take any particular action yet by FERC. That's correct, Your Honor. But if we, I mean, standing at minimum from the fact that we're subject to the study requirements in terms of redressability, if we get vacature of the orders on review, we will, of course, not have to produce any of that stuff and we'll be done. Well, we have a number of cases, though, suggesting that it's not an Article III injury to have, you know, legal reasoning that is harmful to a person, right? That the legal reasoning alone isn't the type of injury that gives Article III standing. Well, not legal reasoning, Your Honor. The orders on review require us to do real stuff. I understand that in the state context, this court, and frankly, while we didn't seek a stay in this court, this court has held that just doing normal kind of litigation and things of that sort is, or even in the agency context, is not sufficiently weighty to trigger the authority of the court, trigger the discretion of the court to stay. But certainly submitting, preparing data reports that cost dollars and cents, real money. I ask, are there any data requests pending? We responded to that letter request. We don't know if they'll ask us for more. Certainly, we're subject to. I think that means no. There are no data requests pending. Well, I will attempt to update this court on my rebuttal about what more we continue to do under the orders on review. Let me come at it this way.  My understanding of your argument that's at point three of your brief is that FERC erred by refusing to determine if it was the core rather than your client that caused the disputed flood. That's right, Your Honor. That's the... Yes, but the... In broad strokes, that's your argument. Yes, but they violated this court's human instructions and didn't consider an important aspect of the problem. And I didn't see in your brief where you asked us at this juncture to say, to make a finding, so to speak, that the flooding was due to the Corps' action, not Grand River Dams' action. Right? You're not asking us to find at this point that there's, you know, insufficient evidence that Grand River Dam is responsible for the flood. Yeah, the only thing we're asking for is making sure the orders on review on that aspect, that they didn't answer this court's actual question about who's causing the disputed flooding. And then that is further an important aspect of the problem under State Farm. So the reason that I ask it that way is that even if we rule for you on that claim, on that claim, what you would get is a remand and FERC would appropriately go back and see, well, was this, you know, you know, check all the evidence that they allegedly overlooked and determine really whether the Corps is responsible for the flooding as opposed to your client. Yeah. Right. And so I guess my point is, is that if you prevail on that point, then why do we need to decide points one, two, and four that you presented in your brief? Because we don't know whether your client will be asked to purchase any land outside of the project boundary or to change the dimensions of the project boundary or whether it's the Corps who has exclusive responsibility to purchase land outside the project boundary with respect to your client rather than your client. Because none of those things may ever come to pass. The project boundary may never change. Nobody may ever have to purchase any land, right? Why are we, why are we even talking about points one, two, and four? Because even if you win on number three, those other issues aren't right. If we win on number three, the orders on review will be set aside. It's a sufficient basis for us to win. But for example, if we win on number one, it is undisputed here. If we win on one, on the meeting of the Pensacola Act, it is undisputed that we already own all the rights within the project boundary. And if we are right about the Pensacola Act, FERC has literally no jurisdiction to do anything else on remand because we already own everything within the project boundary. And if we are correct that the Pensacola Act is plain as day that outside the project boundary, FERC has no power, this proceeding is over. We don't have to do anything else. We can all close up shop and just worry about the relationship. I think that argument is a good one. It's a matter of law. Why isn't the right time to bring that when FERC orders you to purchase land or acquire land outside the project boundary? Because we currently have orders that are final orders that if they aren't set aside on this basis, the proceeding is over. But FERC hasn't even decided whether the project boundary should be expanded, right? It seems that at the moment they say, we think that the project boundary has to be expanded because of whatever flooding issue. And at that point, the dispute is right about A, whether it seems like you have an argument that once the project boundary is fixed, it's fixed and can't be expanded. And then you have a separate argument that if it's expanded, or if it's not expanded, and there's land outside the project boundary that's being flooded, or FERC has no jurisdiction to address that at all, that's between the Army Corps of Engineers and those landowners. But the point is that why is any of that right right now where we don't know whether FERC is going to expand the project boundary or ask you or anyone else to acquire land outside of the current project boundary? And again, I don't mean to be repetitive. It's because there is no dispute that we own all the land within the project boundary. If this court holds that we are right as to what the Pensacola Act means, and it's not a long act, plain as day, the proceedings are over. We're not going to have to do anything else. And we wouldn't have to spend any more money. It would be done. And there are final orders that were petitioned within our 60 days. Can you explain to me why that would resolve everything? I mean, maybe my friend will say something different, but as I understand it, it is undisputed that if there's a holding from this court that the FERC has no jurisdiction outside of the project boundary, that there was nothing else to be done here because we own all of the rights within the project boundary. The entire dispute here and the one that Congress was resolving in 2019 was what to do with disputed flooded lands outside the project boundary. Congress said that is outside FERC's jurisdiction, which is what we were saying the whole time. Once Congress said that, this should have been over. Now, the first time we came up to this court about four years ago, FERC had agreed with us. And a lot of the arguments that I put on my briefs and I was going to present today, I presented to this court. And what this court said is, we need to hear more from FERC as to what this 2019 Act means. FERC has now told you all what they think. Now, I don't think they actually did any textual analysis, but they've told you. The arguments are fully presented. Congress tried to put an end to these proceedings in 2019. It said that outside of the project boundary, FERC has no jurisdiction. These proceedings are all about what is outside the project boundary. This case, this proceeding should be over. We shouldn't have to submit these studies. Mr. Salem, I find the Pensacola Act argument powerful. But if the case is moved, the case is moved. Right? It's not moved, Your Honor. We have submitted information, and there will be additional proceedings from that information. Ending those proceedings that certainly cost us at least $1 to take part in is injury. What is causing that? These orders. What is the responsibility? Vacating these orders. Those are the three elements of standing. So the proceedings would be over. We would save money. We're the direct object of those proceedings. We have to participate in those proceedings. And so there is standing. The case is not moved. This next question might be unfair. We didn't give you a heads up that we would be asked about mootness. I think there's some precedents that say something similar to what you just said in the context of an improperly appointed federal agency. Being subjected to a proceeding before them is injurious. Do you have any good precedents for just being subject to an agency proceeding is an injury? I mean, we're happy to submit some little briefs after this. I mean, you can see that we did not expect this to be an objection, given that we are in the middle of proceedings. They told us to submit reports. There's going to be follow-up. There's going to be back and forth. This has a long tail. I think the original order to do the research and present a full report probably was enough for an Article III injury. But now that that report has been submitted, you can tell, just speaking for myself, I'm a little worried. Now that that report has been submitted, I'm a little worried that you're no longer being injured in an Article III way from FERC, even if there are some pending data requests that you haven't responded to yet. I'm not even sure that there are. I don't think just merely having to show up to a FERC hearing is Article III injury. If it costs $1, I would think that it is. But it also, that would be somewhat strange, I think, I mean, holding, because this has a tail. So if FERC then issues another follow-up information request, I think there'd be no dispute, I think, that there would be, under these orders, that there would, in a letter, saying, hey, we need more, that that would satisfy anybody's concerns with regard to injury. But then we wouldn't have a final order, and we'd be outside of our 60-day window on these orders, and these are the orders that are causing us the injury. And so that would be a pretty strange trap to put us into, where the specific orders on review clearly injured us by doing the studies and doing the follow-up and things of that sort. Is there like a capable of repetition yet evading review exception to mootness here? Is that what you're suggesting, that they're going to continue to make information requests that sort of brings us out of mootness? I mean, I think if the court finds that mootness is interpreted like this in a situation where the orders continue a proceeding that has a long tail, that no one disputes what cost those dollars and cents to have to take part in. If the court thinks that having that kind of long tail isn't enough to maintain a case from being moot, then I think capable of repetition exception would be considered. Sorry, did you say earlier that before FERC you had asked for a stay of this report, asked them to sort of hold the requirement to file a report, and they declined? They asked us for certain additional data, and we said, why are you asking us for this data? We're before the court, and we said, you have no jurisdiction to ask us, because for the court, that was an argument, that was an aggressive argument. We also said, if you don't agree with that, at least use your discretion to stay it. You did. Is that in the record? No, because that was after we petitioned, because we were surprised that they were continuing to ask us for information when their ability to get information from us is exactly what's in dispute here, but they asked us for it. It might be helpful to submit that information to the court in terms of showing ongoing forms. We will absolutely submit that, and we'll submit anything additional. Now, I see I'm negative on my time, and I haven't had a chance to talk about the merits. I don't know how the court wants to proceed with that. Why don't you proceed to the merits? We'll give you a couple minutes. With regard to the Pensacola Act, as I mentioned earlier, I think it clearly, by its plain text, resolves these proceedings. The Pensacola Act says FERC's licensing jurisdiction shall not extend beyond the project boundary. All the disputed lands here are beyond the project boundary. FERC has no jurisdiction there, so we can't do anything else with that. But aren't there a bunch of instances where FERC has adjusted project boundaries? Even in some of the cases that you cited in your brief were instances where FERC did just that, right? In every one of those cases, with the licensee's consent, both in Section 6 of the Federal Power Act, and more specifically in the Pensacola Act, it requires our express written consent of the Pensacola Act to change the project boundary. We'll be clear. We are not going to give that consent for anything to do with addressing the Corps' flood control operations. Unless and until we give that consent, which we will not do for the Corps' flood control operations, there is no jurisdiction over the disputed lands. If that is not enough, the Pensacola Act also says that any lands outside of the project boundary shall not be considered part of the project. That's very important because a project is defined by the Federal Power Act as lands and waters and whatnot that are necessary or appropriate for the management of the project. That means that Congress is saying there that lands outside of the project boundary are not necessary or appropriate for the management of the project. That's an explicit direction from Congress, which is the one that gives FERC all of its authorities. Now, the last time we were before this court, my friend for the city who was sitting over there said, well, look, the Pensacola Act is ambiguous because licensing jurisdiction could have multiple meanings. I think it's no wonder that that argument doesn't appear in FERC's agreement order or in any of their briefs here. Their argument doesn't work. As FERC says on page 43 of their brief here, there is only one kind of jurisdiction here. It's licensing jurisdiction. So there is no ambiguity in the more recently enacted Pensacola Act, which renders Section 28 of the Federal Power Act completely irrelevant. My friends on the other side didn't even give a textual basis in the Pensacola Act for adding the proviso that the act applies only to future licenses. They just said, well, you know, I think FERC says in its orders on review that the Pensacola Act read by its literal terms would violate Section 28 of the Federal Power Act. That's, of course, constitutionally impossible. Nothing Congress did in 1920 could – Can I ask you a question about the Pensacola Act? Yes. So the provision on project scope and boundary jurisdiction amendments, you point out that that first sentence says that commission may, consistent with the requirements of the Federal Power Act, amend the project boundary only with the express written agreement of the project licensees. Yes. That's what you were talking about earlier. Yes. And then it goes on to say if the licensee does not agree to a project boundary change proposed by the commission, the purposes and requirements of Part 1 of the Federal Power Act shall be deemed to be satisfied without the commission's proposed boundary or jurisdiction change. How should we construe that sentence? What does it do? What does it mean? It means that there is nothing else to be done. Once we say the project boundary shall not be changed, the fact that FERC might be concerned about something going on beyond the project boundary is immaterial. The earlier provisions, the prior two, say FERC doesn't even have jurisdiction outside the project boundary. There's no basis to make us do anything there. So if we don't agree to extend FERC's jurisdiction by amending the project boundary, as far as FERC's concerned, it's done. All right. Anything else you want to say on the merits or any other questions on the merits? I was going to ask one follow-up question to Muniz. You were talking about how some of the follow-up requests for information, you asked FERC to state those requests. Yeah. But I would think that if FERC should have stayed those requests while this petition is resolved, FERC should have also stayed the demand for the original report while this petition was resolved. I will provide more details on rebuttal, but I believe that some of that report and those studies were also being provided as part of the ongoing relicensing proceedings. Because we have submitted our relicensing applications, they had that information from that, including the report that we relied on. The latest update was 2022, but then they were asking for more updated information on that report, which is when we asked them, hey, I know you've got this, including from our relicensing proceedings, but we shouldn't have to give you any more information. I'm worried that's a little out of the frying pan of the fryer, though, because now I'm wondering if the follow-up requests for information might also have been necessary for the relicensing proceeding, even if they weren't deemed necessary by FERC for this current dispute. We'll submit the letter, but it's clear that the letter was addressing this. The relicensing proceeding application is closed. We've already submitted our relicensing. Our license expires at the end of this month, and we're going to be just going on a continuing Federal Power Act authority under our license. So we've already submitted our license. Those additional requests for information and any other ones that would be coming would presumably be related to the proceedings arising from these orders under review. I guess just one other thing. I mean, is this the authority's view that it's inevitable that they will be required to purchase land? Absolutely not. No, right. Absolutely not. I mean, this is the whole – this – No, I mean if we disagreed on the legal interpretation. I mean, if we agreed with FERC on it, if, you know, if FERC's decision was allowed to stand, will FERC inevitably require the authority to purchase land? I think that goes to the imminence of injury. Yeah, I mean, if this court – I mean, under the orders under review, we are responsible for the flooding caused by the Army Corps of Engineers, unless we experience a no-rain situation for the next indefinite period of time and unknown in the history of the Arkansas River system. I mean, the reason that all these dams were constructed was the massive flooding that was happening in the 20s and the 30s. Unless that happens, and if we're responsible for the backwater effect of not opening our gates at the direction of the Corps, it will be inevitable that we will have to purchase some land under their interpretation of the Federal Power Act, Standard Article V, and the Pensacola Act. That will be inevitable. So –  I just want to make sure I understand your response to FERC's argument about Section 28 of the Federal Power Act that says that the right to alter, amend, or repeal this chapter is expressly reserved, but no such alteration, amendment, or repeal shall affect any license theretofore issued under the provisions of this chapter or the rights of any licensee thereunder. So if I understand it right, FERC is saying that the Pensacola Act, one, we shouldn't be doing any sort of implicit repeal, but even if we were, it shouldn't affect any license that had been issued prior to the effective date of the act. If I'm understanding their argument correctly, so they would say that the Pensacola Act doesn't affect FERC's power with respect to your client's license. I just want to make sure I understand your response. Yeah, I mean, that is the wrong – their analysis in the orders that I review here is in the wrong legal framework. The governing case that this court should look at is the Dorsey case from the U.S. Supreme Court. There, there was an old statute, I think from 1917, that said that any future changes to criminal convictions is only going to be – is not applied retroactively, and the Congress would need to express language to change that. The U.S. Supreme Court said, no, we're not going to require express language because it was a much more recent, more lenient statute. We're just going to look at the – and the quote is, whether there is a necessary indicia of congressional intent that the new act would apply. Here, you couldn't have clear indicia of congressional intent absent an express statement, which Dorsey does not require, that Congress was attempting to resolve this very dispute. The fight that we had with Miami was started on the meaning of standard Article V and FERC's authority under Section 6 and things of that sort. That would happen in 2018, beginning of 2018, early 19. The Congress comes in the next year and, in a bell and suspenders way, rejects every one of Miami's arguments. But this statute, this Pensacola Act applies to more than this license, right? This isn't the only license that is covered by that amendment, right? Yes, it covers both this license and all future licenses. Nothing in the text can be read, and they do not point to a word in the text that can be read to apply to only future licenses. What they're doing is using Section 28 of the Federal Power Act to blue pencil in a future license-only requirement. Section 28 of the Pensacola Act has existed for 100 years. Never once, never once has either FERC or any court ever used Section 28 of the Federal Power Act in that manner, to blue pencil in, with no statutory hook, no statutory basis, a future license-only requirement on a statute that on its face applies to the current license and the future license, of course. All right, we'll give you some time on rebuttal. Let's hear from counsel for the commission. May it please the court, Jason Perkins for the commission. Since we started this on standing, we might as well talk about that first. After the orders were issued, and you saw in the ordering language of the remand order, the only ordering language there is about the report that was ordered. The report was filed November 13, 2024, in docket number 1494-477. There was a back and forth with FERC staff about the supporting files used to determine the backwater envelope curve parcel analysis in that report. So essentially, the request was, okay, you filed the report, can you send us the GIS data that went into it so we can understand the report? So that was December 19th was the letter from FERC staff. Then January 21st was a response from GRDA saying that they didn't need to provide it. This case is currently before the D.C. Circuit, a number of other arguments provided there. Then February 18th, FERC staff responded and said that, and this is right from the letter from February 18th on page 2, that commission staff's December 19th, 2024, additional information request did not modify the order on remand requirements, but only requests that GRDA provide the existing supporting information it relied on to conduct the requested backwater envelope parcel curve analysis pursuant to the order on remand. So it's just a follow-up. That's all there is. Are there any pending follow-up demands right now? So the submission of the data that was requested from GRDA came in March 5th. I'm not aware of anything on that. And sub docket 477 is where the report is lodged on our website. It is after the hearing order here, so it's not part of the record index, but it is part of the public record, part of the commission record. From FERC's perspective, if this order, if the order was upheld, is there any chance that FERC would not require GRDA to acquire more land? Or is that basically inevitable based on what it's found? I mean, you know, what, you know, like the legal conclusion it's drawn and then, you know, based on, you know, historical flooding and things like that. So your friend on the other side says, well, the only way we wouldn't be required to acquire more land is if flooding somehow stopped. So what is FERC's position on that? Right. So the, I will say that the orders lead in that direction, that this is a case on remand. It was sent back to us to examine all the four issues, and the commission determined it needed more information on a parcel by parcel level to understand. And so it ordered the report, and a natural remedy for an Article V problem is to go get the property rights that the licensee hasn't already gotten. So all that is obvious in the case of the order. That would support Article III injury then. But there's no guarantee that the commission gives in these orders about the scope, process, or impact of future acquisition, and it says several times that they haven't asked GRDA to go do that yet. It's more of a timing issue than anything else. So is there any question that if FERC did require the acquisition of land, then GRDA could challenge that? That would be an article. And the legal reasoning behind that order. That would be an Article III injury once the order to get the further property rights is issued. Usually, as we saw in the City of Hawaii cases, there's a direction to submit a proposal. There's virtually no chance, though, that FERC will require the acquisition of land? It depends on what the commission does with the information in the report. Since we're talking about an Article III issue, we can say that the report itself said that 880 acres would need to be purchased. And that's GRDA's perspective as to what the meaning of the FERC orders translated onto a property-by-property basis would be. So I think you're in a situation where if you are considering that as a potential injury, it would have to be a substantial risk of future economic harm type of injury to sustain standing now after the submission of the report. Because FERC didn't challenge standing here. I mean, we have an independent responsibility, of course, but FERC didn't phrase this. So perhaps suggesting that FERC does believe there's a substantial economic harm. We considered whether this case was a candidate for abeyance because of this sort of situation where the proceedings are ongoing that could result in an Article III injury. There would almost certainly be questions, and there were raised some questions in the rehearing request about eventual scope, process, impact of a remedy. So is a third appeal inevitable here? Or should we think about piecemeal litigation and holding us all until a final order on all of the potential issues are disposed of? But once the report came in, and it's GRDA's perspective that they have to get 880 acres, it seemed a little bit less certain whether or not the parties would support abeyance, whether or not the court would find that that's appropriate. If the court finds that there's no injury supporting standing now, then I assume the case should be dismissed. If it's dismissed on that ground, and then the authority is ordered to buy land, and then the authority files a petition to challenge that, could the authority collaterally challenge the orders that we're talking about today when they challenge that future order to purchase land? I apologize that I'm not sure I have a definitive answer that I can get to that right now, but since we're talking about Article III cases, and we're kind of off the briefs at this point, I will mention that there were some recent standing cases for cases decided by this court. If you're comfortable with me mentioning them, they're called American Whitewater and Industrial Energy Consumers of America, and they were decided in the last few months. One was American Whitewater was about a hydro licensee, and the court asked whether or not standing was appropriate for that licensee as an intervener, because the result of that order was no dam removal needed to happen in decommissioning. So there was a final decision about the licensee's responsibilities, and they intervened to support that decision. They were found to have standing. Industrial Energy Consumers, there were a group of electric customers who opposed the incentive given by the commission, but the incentive necessarily relied on later decision making to actually take effect and actually have economic consequences. In that opinion, this court found that the interest in a collateral estoppel effect didn't support standing. And so that's why I'm not totally sure that I can give you an answer as to what the commission would do as to these issues later, because there are some conflicting precedents as to whether or not that lack of funding now. Do you think that this case is different than Industrial Energy Consumers? Well, I'm not sure because there is a case cited in Industrial Energy Consumers, Alabama Municipal Distributors Group, that says sort of the opposite, that no standing now means you can challenge the rest of all the reasoning of the orders later. So there seems like that would have to be the case, that you would have to be able to challenge the reasoning, because the reasoning would be what would be supporting the order to acquire the land. So perhaps it would support the eventual order that would say you have to procure land, but whether or not there's a legal conclusion that it's part of that, that it relies on past precedent, I'm honestly not sure I can give an answer right now as to whether or not that is something the commission would consider a collateral attack on a prior order. In some other instances, it is considered that, but under Industrial Energy Consumers, there wouldn't be a problem. So I'm honestly not sure I'd have to check. So one of the arguments that notwithstanding any of that, we should forge ahead because with respect to issue one, the Pensacola Act, if petitioners are right about the construction of the Pensacola Act, FERC has no more jurisdiction over it with respect to this flooding issue, and so we should decide that issue now. In terms of if that supports an injury or... Well, that... I think your friend on the other side says that that's right, and they have standing to pursue that claim now because that will end all of these proceedings, including all of the potential further requests for reports and studies and data, etc. I'm not sure that having to participate in commission proceedings has necessarily been identified as an Article III injury, at least when you're a commenter who wants to object to something the commission did. I think, generally speaking, the court has found that that doesn't support... The amount of resources you spend on administrative proceedings or litigation is not considered an Article III injury. When it's the licensee, I'm honestly not sure if that question is different because that's a regulated party responding, but certainly it's the case that there is a lot of regulatory process related to all of our federal licensees, especially when relicensing is pending, so it would be hard to identify what's only responsive to this proceeding at this point until there's further process actually undertaken by the commission. I'll ask you about FERC's interpretation of the Pensacola Act. We frequently have situations where the court wishes that Congress would get involved and say what it would like an agency to do, and it very much seems like that is what Congress did here very explicitly. Then FERC takes Section 28 and says, well, yes, Congress does the Pensacola Act, but we're only going to apply it to future licenses. Can you... I mean, that just seems... I mean, the Act seems quite clearly... There's nothing in the Act that suggests it's only prospective. I think it's two responses to that. One, that was the commission's position the first time, and we were told to look at it again by this court who said that there are two possible readings. Looking at it again doesn't mean... Those orders are not... I mean, that was the square holding of the first round of orders, and this court sent it back to us and said the statute is ambiguous. Decide whether or not it is unclear to us whether the amendment strips FERC of authority to enforce the existing license or that FERC's authority to impose new conditions on future licenses is limited. So automatically there, there's a problem. If there's a clear statement rule in Section 28, which is how the commission read Section 28, it's unclear how you can take the position that our authority to enforce the existing license has been stripped by a provision that isn't... You could interpret it's unclear to us as it is ambiguous in a term-of-art way that triggers some of these canons of interpretation that can trigger when there's ambiguity. You could also interpret it's unclear to us to mean we don't know. And if all the court was saying is we don't know if the Pensacola Act applies prospectively or not, or whether the Pensacola Act only applies prospectively, I don't think there's a holding that binds FERC in any kind of law of case sense. Well, the process gas consumers group case that we cited in our brief does tend to give law of the case principles to the prior case, and I think that has been the practice in FERC cases that return back up to the court so that you are looking from the starting point of what was decided in the first case to what was granted to the commission and ensuring that we gave a reasonable response to all those things. I think that happened in this case. I think holdings in a prior decision are a law of the case, but the line in the previous opinion in the case that says we declined to decide this issue, that's a holding that in some ways ties an agency's hand on remand. I think that's certainly how the commission understood it in this case. But the question is whether you were wrong. Well, with respect, I think aside from whether or not it was a holding of the past court, if those are the two options, it either strips our authority in the existing license or our authority to impose conditions on further license is limited, then choosing the existing license option creates an implied repeal. That's what these orders are crystal clear about. And under the multitude of cases that we cite in paragraph 39 of our remand order, that is not the appropriate form. Section 28 has never been used in this kind of robust way to change to blue pencil subsequent statute. Is that correct? I think we don't have many cases that cite Section 28, probably because as you see in other parts of the Pension Law Act itself and a lot of the other examples that are cited of project-specific legislation, Congress knows how to say notwithstanding any other law when it means that. And so it's even saying that in other parts of subsection B of this statute. And so when that language is absent from 3, what does that mean? I think the best language for the authority is the boundary jurisdiction amendments language.  And I'm going to do a couple of ellipses here. But it says the commission may amend the project boundary only with the expressed written agreement of the project licensing. It just sounds very present tense to me. And our reading of that is if you compare it to Article 2 of the existing license, that's clear override of the existing license. But then it's last in time and it controls? Well, but that's the issue under Section 28 is that we have to be certain. We have to have all of it. We essentially have to have certainty to the level that the Supreme Court would find that what Congress meant to do there was essentially overwrite Article 2 of the existing license when it didn't specifically say it was doing. It didn't use magic words, but it seems like definitely the best reading. Arguably the only reading of this sentence is that it applies to existing licenses. The commission may amend the project boundary only with the agreement of the project licensing. We're talking about a project boundary that exists today. What could the word the be referring to if not the project boundary that exists today? Well, I would point the court to the original introduced text of the Pensacola Act, and it included a more specific provision about what it meant by project boundary. I think it's telling that your first go-to answer after that question was to go to legislative history. I'm not saying we would never look at legislative history, but I think you were doing the best that can be done to defend interpretation of text that's pretty clear. Also, the fact that if that's the only indication that we have, then I think we're a little bit short of what ethic systems the Supreme Court would tell us is necessary. Maybe we're then just trying to help make more sense of what Congress did, and I don't know that that's our task here. But to answer Judge Walker's question, let's suppose 10 years from now after the license has been renewed, this Pensacola Act is still going to be in effect, and this language would be talking about any amendment of the project boundary of that license at that time, 10 years from now, right?  50 years from now. Right, and that's why the Commission said it can give effect to all the language, and that's why it's the most reasonable reading. It respects Section 28 and the Pensacola Act by giving the Pensacola Act effect on future licenses, including that provision, which would mean Standard Article 2 is not going back in future licenses. So it's all there, and that's why we're saying that that's what the Supreme Court wants us to do in this situation, that we are supposed to try and give effect to everything Congress has done. It may not be precisely what some people might think Congress meant at the time, but we have to be really clear about what we think Congress meant at the time in order to give effect to one end, not the other. It makes it really hard for Congress to get anything done. We do this, and we really mean it for right now. Right, but the other sections of B are pretty clearly applying the type of language we would expect to know that we're talking about exceptions from a currently enforced rule. So the notwithstanding language in those sections is helpful. If I told you right now that you could amend your brief, do you think I'm only applying that to future cases? Well, it would depend on whether or not you talk about this case or some other case. If you just said you can amend your brief, I've got a number of briefs in front of this court. So which case are we talking about? Which license? So I don't know that that's necessarily as positive. I think the issue is that if you look at the full text of what Congress was doing here, you can see under B, and there are sites that we can provide for this, the understanding of all three sections under B is best applied to future licenses. And the reason why is that under B1, federal land, under current understanding of the project, there is not federal land under the current license. There will be federal land on relicensing. You look at JA998, they're identifying that there will be federal land involved in license going forward, and there currently isn't any. Under B2, those requirements there, the text says the commission or any other state or federal agency shall not include any license for the project. Well, we have to be talking about a future license there because we've already issued the one in 1992 that's still in effect, so to include in any license means when you're issuing a license. And then you get the three, there's no notwithstanding language, there's no language that means we're definitely talking about new licenses or definitely talking about the existing license, and so you get the apply to repeal question. So that is essentially what makes sense of all parts of B and Section 28. Is it possible? Well, that's all right. We're good. All right. If you want to make any concluding remarks, you can. Otherwise, we'll hear from counsel for the interview. If the court reaches the merits of the case, we think a reasonable place to start is with the finding on causation, which identifies that there's a problem here that is caused by the flooding, which is an issue that has been remanded to the commission. And the commission made a determination on the evidence in terms of what else the court decides to address. It may depend on which results you reach and whatever other order you think may be useful with that. Thank you for your time. Good morning, Your Honor. May it please the court. David Gossett for the city of Miami. Given the questioning so far, I hope briefly to talk about four issues. I'm going to start with standing, which is obviously something that has interested the court quite a lot. I don't actually have much to add to what I said. I was going to focus the court on the fact that even under the authorities' submissions, they acknowledge that there is flooding on 880 acres of land in the city. There's a dispute about whether it's 880 acres or 13,000 acres. But that is something that we think will get resolved going forward. So inevitably, under anyone's view, they would have to acquire some land? Under FERC's legal interpretation? Under FERC's legal interpretation, I think it is inevitable that if this court affirms that, the city will have to either acquire land or acquire flowage easements. But I do think that if the court dismisses for lack of standing, there is no question in my mind that the authority could challenge the legal conclusions here in those future orders. I don't know if I would call it a collateral attack or just the fact that they are incorporated into that. The last thing I'll say on that is I think everyone before the court would love some closure on these issues because obviously it will affect what happens below, and it might clarify how to proceed. But I'm not addressing the Article III aspect of that. On the CORE's role, Judge Wilkins, which you asked about, I think it's important to distinguish what the commission decided there, which is I think the only legally relevant question. The commission held below that GRDA will be legally responsible for acquiring land irrespective of whether flooding on that land is caused by GRDA's operations of the dam when it itself is controlling the dam or when it is operating the dam under the direction of the CORE when the water is in the floodplain between 745 and 755. That was the question that was unclear before, but the commission has now clarified that that's its view and that that's the CORE's view as well. It's also the view that the courts in Oklahoma have similarly taken in private litigation about that. So I think that the question of the CORE's role has been adequately resolved for purposes of assuming there is this flooding and assuming the Pensacola Act, which I'll turn to in a second, doesn't address that, the authority has to deal with that flooding. So your argument is that even if your friend on the other side is correct that the flooding is due to the Army Corps of Engineers' action or their direction, it's immaterial because it's flooding nonetheless and FERC's view is that the Grand River Dam Authority will have to require new rights or easements or whatever bundle of sticks is required to address that flooding regardless of who's responsible. Yes, because flood control is a project purpose and the authority, when it accepted the license, accepted responsibility to own all lands necessary and appropriate for project purposes including flood control. It knew that there could be flooding from the property and it accepted it accordingly. I think on this it's also worth flagging part of the reason there is this flooding now regardless of whether the CORE controls it in this narrow range is because over the course of the last 30 years the authority has raised the average level in the reservoir significantly by 20 feet or more and that means that there is much more likely to be times when the water is in the flood zone and therefore when the CORE can say, okay, we don't want to flood downriver, we're going to flood upriver. That's basically what the CORE is deciding is who to flood, not whether there is flooding. It's because the CORE is saying, okay, the water is too high in this reservoir, what are we going to do? Do we flood downriver or do we flood upriver? So that's part of the reason why it doesn't make sense for the CORE to be legally responsible. Finally, of course, to the extent there is anything to the authority's argument about that being the CORE's responsibility in some sort of taking theory, the appropriate route for that would be for the authority eventually to bring a case in the Court of Claims for such a taking. The level of the reservoir, when you say that the authority has raised the level of the reservoir, does that determine whether the flooding is down of the reservoir or upstream of the reservoir? I didn't understand the question. No, sorry, I probably was not very clear.  At the moment, the rule curve for the reservoir, which is basically where the water is normally supposed to be, ranges between 742 and 744 feet. Then, if there's a lot of rain, the water is going to go up from there. It used to be the case that the rule curve, where the authority set the reservoir level on a general basis, was in the 730s. It generated less power, so the authority made less money off of the power. For the power, that was the rule. Yeah, I mean, it's power and recreation. I mean, it's a bigger reservoir now. There's more space for boating, et cetera, if the water is higher in the reservoir, because the reservoir is basically a lake. There were reasons why the authority wanted to raise the reservoir. They generate more power, but it causes— Okay, thanks. Turning to the Pensacola Act, which is obviously, if you reach the merits, the most important question here, I think there are definitely two ways to read this act, which is what Judge Silverman held. Judge Walker, you said that the authority's interpretation is powerful, and it may be, but I think that's not the question. The question is whether Congress impliedly repealed Section 28 here, and there's a general principle against implied repeals, and here we have the added benefit of what we're talking about, fundamental to the whole structure of the Federal Power Act, that we don't change rights and obligations of existing licensees once they get a license. That's the principle that we're talking about here, is that when they got this license, these were what they were allowed to do, and this is what they must do. And so— Isn't it completely consistent with that principle to read the statute as the petitioners have asked us to? I mean, number one, this doesn't seem like the typical implied repeal case, because here Congress defined project to be this specific project that they are talking about, that they are regulating. So there's nothing implicit about that. That's very explicit. Yes. And then they say that's what project means, and then in project scope they say, if the licensee does not agree to a project boundary change proposed by the commission, then that's it, basically. And it says amend the project boundary. So we might have thought that it was ambiguous before, but it doesn't preclude us now from saying the best reading of the statute, now that we're not doing Chevron deference to an agency, is to say that they meant this project and the project boundary as it exists existed on December 20th, 2019. It was signed into law. I have both a legal answer and a factual answer. The legal answer is that I think, obviously, no one is claiming Chevron deference. We all understand we're out of the Chevron world, and no one's even claiming that this is the sort of factual question that, under Loeb or Bright, might still get deference to what the agency has said. This is a question of what the statute means. But I think that Section 28, as a clear statement rule, as a pre-commitment, it's sort of like the major questions doctrine. It's to the extent there's any reading of this law that doesn't fully run roughshod over the text of the law, under which the existing license obligations aren't changed, the court must endorse that reading. It's not about what FERC said. I'm not saying that you owe deference to the commission or to Mr. Perkins' argument. It's that you owe deference to Congress' statement and to the principle of 100 years of statutory interpretation or more that implied repeals are disfavored and that this has to be viewed as an implied repeal of Section 28 to the extent it is. The other principle you said governed here is that there was a principle of making sure that licensees' expectations and the expectations of their investors and these projects, et cetera, aren't unsettled. I mean, isn't this Congress saying that we are going to make sure that those expectations are not unsettled here because we're not going to allow a project boundary amendment unless the licensee agrees? The Congress was also presumably paying attention to the rights of others, the obligations as well as the rights of the project. And on Section, I guess it is B3C, which is where you're focusing about project boundary amendments. I think that's where it's worth looking again, as Mr. Perkins did, at all of the language of the statute and how B1 has nothing to do with the current license. There is no federal land on the current license. B2, license conditions, says that you shall not include in any license requirements relating to surface elevations. The current license has requirements about surface elevations. That's the rule curve. So this is saying don't put this into a license, but it's not saying remove it from the license that's already there. There's no reading of B2 that applies to the current license. Then B3, the project scope language, B3A says the licensing jurisdiction of the commission shall not extend outside the project boundary. And that's what I think it is reasonable to interpret as being about the new license. There was the relicensing proceeding ongoing at the time the Pensacola Act was passed. So this could be about you're having all these fights, let's work these out in the current license, and then it's set. We're not going to have this fight going forward. And then B3B and C are part of that project licensing. On project licensing, I should also flag, an entirely different part of FERC deals with project licenses versus complaints on existing licenses. They're different offices and different people. So talking about the project licensing really does make some sense only if it's interpreted as being about the new license. So I think it's unfair of the authority to argue that we haven't focused on the language of this statute. I think we do, and it does apply. So yes, B3C says that the authority gets to reject project boundary amendments. The question is just are those project boundary amendments under the current license or under the new license or both? And we think that it is a perfectly plausible reading, and therefore under Section 28, the reading of the court must accept that that applies to the new license only. I mean, implied repeals are disfavorable. It's just one way of reading statutes over time. Another one is that more specific statutes control more general statutes, right? And we shouldn't read new congressional enactments overly narrowly to give them no effect because of an almost 100-year-old statute. I mean, there are a lot of principles that we apply in understanding how two statutes work together over time. That is, of course, true. We learned that in law school. But it doesn't change the fact that there is the implied repeal rule and that here what we're talking about impliedly repealing is actually itself a rule against implied repeals. So you're saying don't impliedly repeal a rule that says we don't impliedly repeal existing licenses. We don't change licenses. And I think that's particularly powerful. Sorry, you have a follow-up question before I say my next point, which is slightly off. I mean, I don't think that the rule against implied repeals means that any plausible reading that doesn't lead to a repeal is the one that we must adopt. I mean, I think we're trying to figure out the best meaning of both the Pensacola Act and, you know, Section 28 and how they fit together. And the best meaning might not just be a meaning that's plausible because of a rule against implied repeals. That is, of course, true. On this, I'll talk to Judge Walker, the only legislative history that exists of the Pensacola Act is one line in the conference report that says this is about delineating the scope of the core versus the commission. That's all that the legislative history says. So Congress as a whole... I mean, that may be all the legislative history says. The history surrounding the amendment is not good for you. I'm not saying that we should go beyond the plain text... I'm not either. ...of the inquiry into that, but that history is something along the lines of people like to have fun on the lake with their boats. People who do that don't really care whether Miami gets flooded. They had and probably have more political power than the people in Miami have. So they use that political power to get a bigger lake for their boats. I'm not casting a value judgment on that, but that would be quite consistent with the meaning of the plain text as the authority has described it, although I suspect the authority would not like that explanation for how the law became the law. To be clear, the authority can continue to flood this land. They can keep the water where it is. It's just a question of whether the costs of that should be allocated to all of the rate payers or to just the city. And if I were a policymaker, I may well say, let's impose the cost on the people who are flooding other people's land. But I'm not Congress. That's where I think the fact that this is one small provision in a 1,700-page bill that is never described as doing what you just said does have some bearing in how the court should think about Section 28. Because I think that's, again, where we go back to. Section 28 was passed by Congress when they first set up the entire way that they incentivize people to build dams in this country. And it's existed that whole time. It has been interpreted. I think the case I'd point the court to is this court's Montana case from 1970. What the court held in that case was that it was okay to change the structure by which someone's rights were remedied. It used to be the case that if there was a claim that you had done something wrong, the licensee had private arbitration to decide if it was okay. Then after that license was issued, FERC was created, and the law was changed so that FERC decided it, and then there was appeal to the court. And the court said, okay, that procedural change is okay because it's not substantive. It's not changing substantive rights or responsibilities under it. But actually, if you read the Montana case, it suggests essentially that a substantive change in the rights or obligations of a licensee might actually have constitutional problems. So I think it… What would be the constitutional problem, though, because the Pensacola Act is still prospective. It's not changing… I think it was… To be clear, in that case, it was taking something away from the licensee that they had or that they claimed they had, and then it would be sort of a takings or a contract violation would have been the theory there. But the obligations similarly are bound by Article 28. No one's claimed that it's only about their rights. It's also their obligations. I only ask this because I think you can answer it in 10 seconds. It's not worth more than 10 seconds. But there's a Pensacola, something spelled like Miami, and a Disney all next to each other. Is that a coincidence? Do you know how they all got these Florida names? Miami is actually a tribal name. And in Florida, too. And in Florida, too. So the Miami tribe was there. I have no idea how Disney got there, but Miami is a tribal name. And, in fact, there's a representative of the tribe here. I got that. If there are no further questions, thank you so much, Your Honor, and thank you for the time. If I may, Your Honor, I think the threshold issues discussed here in terms of standing, I think it's actually an argument of mootness, and that's quite significant. There's no real dispute that there was standing when we filed this petition. When you have a question of whether a case becomes moot, the presumption flips the other way. So if the court thinks that there is now a case that clearly has standing at the beginning, has become moot, we would ask for supplemental briefing. To the extent that I have anything to add to say before, is that in this order on review at JA 1038, for specifically reserve the right under these orders to require more reports, supplemental information, et cetera, during the penalty's proceeding, they've already exercised those rights. So I think that that will be sufficient to rebut the presumption that the case that wasn't moot before has become moot, but I would ask the court to permit us supplemental briefing on this issue since it is not a standing issue, it's rather a moot issue. How fast could you do it? As fast as Your Honor so wants. Now, with regard to the merits, my friends keep talking about... Sorry, if you're going to do supplemental briefing, if you could also address the, you know, sort of the imminence of any economic harm of acquiring property, of being required to acquire property. Absolutely, Your Honor. We'll issue an order that sets forth what we want supplemental briefing. Thank you. Quickly on the merits, my friends keep talking about this empire repeal doctrine. I think the reason they keep talking about that is they can't actually win on the controlling doctrine. The Dorsey case from the Supreme Court is exactly on point. Also a statute 100 years ago, that 100 years ago statute required an express statute in the future. U.S. Supreme Court rejected that requirement. The only way they can win, I believe, is a magic order requirement or a very stringent notion of clear, unambiguous statement. That's just not what Dorsey says. And the reason that Dorsey essentially took out the express requirement that had been in the 1917 statute is they said, we've got to respect the fact that the dead hand of a prior Congress can't bind a new Congress. The only time that we've been able to find that Section 28 was discussed in the case before this court was the PG&E case written by then Judge Ginsburg, future Justice Ginsburg, joined by Judge Scalia. And the only thing that this court said about that was, well, they purport to, the prior Congress purported to bind future Congress. I think suggesting that to the extent it was effective, it was not very effective at all when you have a future Congress acting as it did here. I had a little bit of time travel here when I heard my friend from Miami bring back this licensing jurisdiction argument. I think there's a reason that wasn't in the orders below or any of the briefs here. There's only one kind of jurisdiction that FERC can exercise here. As they say on page 43 of their brief, that's the jurisdiction that they do not have outside the project boundary. I also heard my friend say something about 880 acres. Those 880 acres are entirely the result of the Corps' flood control operations. While my friend does not believe that that is a relevant consideration, this court in the first call around clearly did. It asked for a factual determination by FERC that FERC refused to then give on remand. And it even said why it wanted it. This court cited Arkansas Game and Fish Commission, which is the case that says the flooding by FERC of land, even if it's temporary flooding, can be a taking. And what do you do when the federal government takes your land? You go to the Court of Claims and you sue, which is what they should do if they have a problem with anything that the Corps is doing. They do not have any claim against us where we are acting only as an agent of the Corps when we're opening and closing those gates when it gets above 745 feet. Thank you, Your Honors. The case is submitted.
judges: Wilkins; Rao; Walker